[No. 1890.]

## Lee Walker *v.* The State.

1. Murder — Indictment.—See the statement of the case for a form of indictment *held* sufficient to charge the offense of murder.

2. Same.— Bills of Exception, when too indefinite to point out distinctly the matter complained of as error, will not bring such matter properly before this court for review.

3. Same.— The statutory provision requiring the indorsement on the back of an indictment of the names of the witnesses upon whose testimony it was found is merely directory.  Such indorsement is no constituent part of the indictment, or of the finding of the grand jury, and is not essential to its validity.  The sufficiency of the service of a copy of an indictment upon a defendant cannot, therefore, be questioned upon the ground that the names of the State witnesses were not indorsed upon the back thereof.

4. Evidence — Privileged Communications.— Article 733 of the Code of Criminal Procedure, which inhibits an attorney from disclosing privileged communications, extends the privilege to any fact which came to the knowledge of the attorney by reason of such relationship.   The privilege exists whenever the relation of attorney and client exists.   In regard to the persons to whom the communications must have been made in order to be thus protected, they must have been made to the attorney, counsel or solicitor, acting for the time being in the character of legal adviser.   The privilege does not extend to information received from the party by one in the character of friend and not as counsel; nor to a student at law because then studying in the office of an attorney, or under his direction; nor to third persons present at the conference between the attorney and client.   Under this rule it is *held* that, even if the relation of attorney and client, in this case, existed at the time of defendant's conference with one C., an attorney, at C.'s house, the confessions or statements of defendant to C., though privileged as to him, would not be so as to C.'s mother-in-law, who was present and heard the said confession or statement.

'5. PRACTICE — WAIVER.— "The defendant to a criminal prosecution may waive any right secured to him by law except the right of trial by jury in a felony case." Under this rule it was not only competent for the defendant in this case to consent that C., the attorney, to whom he made the statements he claimed to be privileged, should testify as a substitute for his mother-in-law, who was present when the statement was made, and state the facts which she would state if personally on the stand, but he could, had he seen proper to do so, have waived his privilege as to the attorney himself, and have consented to his testifying *in propria persona* as to the privileged communication.

APPEAL from the District Court of Marion. Tried below before the Hon. W. P. McLean.

The charging clause of the indictment in this case reads as follows: " . . . that one Lee Walker, late of said county, on the 19th day of August, A. D. 1884, and in said county of Marion, did unlawfully, and with his express malice aforethought, kill and murder one James D. Holt, by shooting him with a gun; contrary," etc. The conviction under this indictment was for murder of the second degree, and the penalty assessed against the appellant was a term of fifty-seven years in the penitentiary.

Doctor J. G. Eason testified, for the State, that he made a cursory examination of the dead body of James D. Holt, in Marion county, Texas, during the month of August, 1884. Some twenty-eight or thirty shot from a gun passed into the body of the deceased, entering his back, and two shots penetrated his arm. None of the shots passed out of the body or arm. Witness examined the body of his own volition, and not at the instance of any one. He did not probe any of the wounds.

Robert Holt, a son of the deceased, testified for the State that in August, 1884, he and his father, the deceased, who were sitting in a wagon on a public road, were approached by the defendant and his brother Anderson Walker. Deceased remarked to the defendant: "Lee Walker, you went across my field last Sunday, and if you don't stop it, I will hurt you." Defendant denied that he crossed the deceased's field on the previous Sunday. Deceased replied: "You are a liar," and drew a standard from the wagon frame and started towards the defendant. Defendant thrust his hand in his pocket as though searching for a knife. He presently appeared to be looking for a stick. He then left and went off down the road towards his house. Deceased then asked Anderson Walker if the defendant was going after his gun. Witness and deceased then drove on a short distance to the forks of the road, one of which led

to defendant's house. On reaching this point the deceased told witness to go on; that he was going to wait and see what that rascal was going to do. He then got out of the wagon and went in the direction of defendant's house. Within ten or fifteen minutes witness heard two reports of a gun. He left his wagon and went in the direction taken by deceased, and soon found deceased on the ground, moaning. Witness went from the body home to get his shot-gun, but his mother forbade his taking it off. Witness next saw the deceased when he was brought home, dead. The last witness saw of the deceased before hearing the two shots, deceased was standing in the road. After the shooting, witness found him lying on the ground near the same place. No one was at the body of the deceased when the witness reached it.

M. T. Slaughter testified, for the State, that on the day after the homicide he went to the place of the killing to look at the ground. He did so at the request of Sheriff Wright. Witness found some blood stains on the ground, and some paper that looked like gun wadding. He found, near the blood spots, a pin oak stick about four feet long and about two inches in diameter. At the point where witness saw the blood, the woods were open, but grew thick about twenty or thirty yards from that point. Witness noticed that the ground had been considerably trampled behind a haw bush that had been partially felled. Witness saw the tracks of a person behind that bush. The blood spots were between two roads, one of which led to defendant's house and the other to Ike Walker's house. Ike was the defendant's father. The blood spoken of was nearer the road to defendant's house than to the other road, and was about eighty yards from the fork.

Cross-examined, the witness stated that the tracks were made by a number eight or nine shoe. Deceased wore a shoe of such size. Witness extracted several number one duck shot from a pine tree that stood near the blood spot.

The opinion of the court states the circumstances under which Mr. J. H. Culberson, having been rejected as a witness, upon the ground that his testimony would disclose privileged communications, was permitted to testify as to what would be Mrs. Bridges's evidence if on the stand. That testimony would be that the defendant came to Culberson's house between 12 and 1 o'clock on the day of the homicide. He was very hot and greatly excited, and said that he had shot Holt. Culberson asked if he killed Holt, and he said no, and that he thought Holt was in town after him. He was too much excited to talk easily or freely. Culberson told him to go to

the well and wash his face in a tub of water, and to return and tell him all about it. He came back from the well and told Culberson that Holt came after him with a stick; that he told Holt to go on, as he did not want to hurt him; that Holt continued to advance, when he fired; that defendant, before going to the well, told Culberson that Holt shot at him first with a pistol, and then snapped the pistol, when he fired and shot Holt. The State rested.

Anderson Walker, the defendant's half-brother, testifying for the defense, corroborated the statement of Robert Holt, up to the time that deceased drew the standard out of the wagon frame. When deceased drew the standard, the defendant and witness ran off down the road towards home, the defendant ahead. Defendant went home and returned with a shot-gun, meeting witness about two hundred yards from home. They came back over the road together. Deceased sprang from an ambush behind a pine tree, cried: "Now, d—n you, I have got you," and knocked defendant down once with a stick, and staggered him with two or three other blows. He, deceased, then said that he would get his shot-gun and kill defendant. At this he turned and defendant shot him.

James Walker, another of defendant's brothers, testified in his behalf that about one month after the killing of the deceased, he met deceased's son Bob Holt, at the cow pen. Bob told him that the deceased sent him home after his shot-gun, and that if he had got back with it in time, Holt would not have been killed.

Mrs. Susan Holt testified, for the State, in rebuttal, that on the day of the killing Bob Holt came home and seized the shot-gun and started off with it, but she made him leave it.

It was further proved that the deceased came to his death by being shot with a gun, and that when the defendant was first seen on the day of the killing after it occurred, which was about two hours afterwards, at J. H. Culberson's, there were no visible marks of violence on his person.

The motion for new trial presented the questions discussed in the opinion.

*Todd & Eldridge* and *J. A. Armistead*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Appellant was tried upon an indictment charging him with the murder of one James D. Holt. His conviction was for murder in the second degree, with the punish-

ment affixed at imprisonment in the penitentiary for a term of fifty-seven years.

A motion to quash the indictment for invalidity was overruled. This indictment is a literal copy of the form for an indictment for murder held by this court to be good in many decisions where its sufficiency was questioned. (Willson's Crim. Forms, § 388, p. 173, where the authorities are all collated, and notably amongst them see *Bean* v. *The State*, 17 Texas Ct. App., 60; *Sharpe* v. *The State*, id., 486, and *Bohannon* v. *The State*, 14 Texas Ct. App., 271.)

Defendant's first bill of exceptions was to the insufficiency of the copy of the indictment as served upon him. In itself the bill is indefinite and insufficient to show the point complained of, and we might upon this ground excuse ourselves from noticing it. We understand, however, from the brief of counsel, that the objection urged was that the copy of the indictment served upon him did not contain, indorsed upon it, the names of the witnesses, as required by law, upon the original indictment. (Code Crim. Proc., art. 413.) In *Hart* v. *The State*, 15 Texas Ct. App., 202, it was said in discussing this question: "Whatever may be the rule or reason of the rule in other States, the question has long been a settled one in Texas. In the early case of *Steele* v. *The State*, 1 Texas Reports, 142, it was held that the statute requiring such an indorsement upon the back of an indictment was merely directory, and that such indorsement is not a constituent part of the indictment or of the finding of the grand jury, and is not essential to its validity. In *Skipworth and Boles* v. *The State*, 8 Texas Ct. App., 135, it is said: 'While the statute prescribes that the names of the witnesses upon whose testimony the indictment is found shall be indorsed upon the indictment, yet no mode is designated by which a failure to do so can be reached, and in the absence of further legislation the omission must be held immaterial.' . . . Doubtless it would be the better practice for the clerk, in making out the certified copy of the indictment, to copy all the indorsements upon it; but we know of no statute or provision of law requiring that the *certified copy* shall contain such indorsements." (Willson's Crim. Forms, p. 19, sec. 58.)

It is shown by the third bill of exceptions that the State proposed to prove by one Culberson the confessions of defendant voluntarily made before arrest. On his *voir dire* Culberson stated that he was a close neighbor of defendant, and that defendant knew him to be a lawyer; that defendant made his statements to witness at witness's house just after the shooting; that, though subsequent negotiations

had taken place between defendant's friends and witness about witness's being retained and employed as an attorney to defend the case, they were never consummated in any contract of employment, but that pending these negotiations witness had appeared at an examining trial for the defendant so far as to waive an examination in his behalf. Upon these facts appellant objected to the witness's testifying to said confession, upon the ground that they were privileged communications, which the attorney could not divulge, and the court sustained the said objection. The prosecution then proposed to prove the same confessions made to Culberson by the wife and mother-in-law of Culberson, who were present in the house at the time, and heard the confessions as made by defendant to Culberson. Defendant objected to the competency and admissibility of these witnesses upon the ground that the communications, being privileged as to Culberson, would be privileged as to any one, especially a member of his family who was present and heard them. This objection being overruled by the court as to the mother-in-law, who it appeared was not a member of Culberson's family, but only a visitor to his family at the time, defendant saved an exception to this ruling; and thereupon counsel for the State and defendant suggested to the court that, inasmuch as the testimony of (the mother-in-law) Mrs. Bridges would be the same as that of Culberson, defendant would withdraw his objections to Culberson's testifying to said confessions, and in open court consented that Culberson should testify, but still claimed that Mrs. Bridges, whom Culberson was simply testifying as a substitute for, was incompetent.

In *Hernandez* v. *The State*, 18 Texas Ct. App., 135, it was held that our statute, Code Crim. Proc., art. 733, inhibiting an attorney from disclosing privileged communications, extended the privilege to any fact which came to the knowledge of the attorney by reason of such relationship. The privilege exists whenever the relation of attorney and client exists. But, says Mr. Greenleaf: "In regard to the *persons* to whom the communications must have been made in order to be thus protected, they must have been made to the *counsel, attorney* or *solicitor* acting for the time being in the character of *legal adviser*." (1 Greenl. Evid. (13th ed.), § 239.) The privilege does not extend to information received from the party by one in the character of a friend and not as counsel (*Hoffman* v. *Smith*, 1 Cai., 157; *Goltra* v. *Wolcott*, 14 Ill., 89), nor to a student at law, because studying in an attorney's office or under his direction (*Holman* v. *Kimball*, 22 Vt., 555; *Barnes* v. *Harris*, 7 Cush. (Mass.), 576), *nor to third persons present at the conference between*

*attorney and client.* (*Hay* v. *Morris*, 13 Gray (Mass.), 519; *Goddard* v. *Gardner*, 28 Conn., 172; 1 Wait's Act. & Def., p. 470; Whart. Crim. Evid. (8th ed.), § 502.)

Mrs. Bridges was not incompetent or disqualified because she was present and heard the confessions made by defendant, even assuming that the relation of attorney and client subsisted in fact between him and Culberson. If Mrs. Bridges was competent, then under the circumstances developed, we see no reason why defendant could not, as he did, consent that Culberson might testify as a substitute for Mrs. Bridges; that is, state the facts which she would have stated had she been a witness on the stand. In fact, defendant could, had he so desired, have waived the privilege as to his attorney and have consented to the attorney's testifying. (1 Wait's Act. & Def., p. 471, § 5; Whart. Crim. Evid., §§ 498 and 500.) Our statute provides that "the defendant to a criminal prosecution for any offense may waive any right secured to him by law except the right of trial by jury in a felony case." (Code Crim. Proc., art. 23.)

These are all the questions presented by the record or urged on this appeal. With regard to the charge of the court, it was an ample, lucid and able presentation of the law applicable to the evidence, and no objection has been or could be maintained to it. The verdict and judgment are fully sustained by the evidence. No error being made to appear, the judgment is affirmed.

*Affirmed.*

[Opinion delivered October 28, 1885.]